J. D. CHILDS AND WIFE
      vs.        }  DECEMBER TERM, 1849.
LUCY M. SMITH.

[JURISDICTION—DOWER.]

It is conclusively established, that a court of equity may interfere by injunction to prevent the commission of waste.

The objection to the jurisdiction of the Court of Chancery to stay waste committed by a dowress on her dower lands, upon the ground, that the remedy should be sought on the equity side of the County Court, where the proceedings for partition were had, would apply with equal force to every application to enjoin proceedings upon judgments and suits at law in the county courts, and is, therefore, untenable.

The interest of the widow, is a continuation of the seizin of her husband ; the seizin of the heir being defeated *ab initio*, the moment the certainty of the estate to be held by her is ascertained by the assignment.

The commissioners divided an estate into eight parts, and assigned a third of each division to the widow, as her dower, one lot consisted almost entirely of wood, the others of arable lands. HELD—

That the widow was not bound to use each parcel, as if her husband had died seized only of the one lot to which such parcel belonged ; but might take from the wood lot, fuel and timber for the use of the cultivated lands.

[Fielder B. Smith, late of Calvert county, being possessed of valuable real estate in said county, departed this life in the year 1845, leaving a widow, Lucy M. Smith, (the present defendant,) and several children and the representatives of other children, his heirs at law; five of them being children of the defendant, and the other descendants of the deceased by a former marriage. By proceedings under a commission for partition, issued out of Calvert County Court, the lands of the deceased were divided into eight parts, and assigned to the parties entitled; a third part of each division having been assigned to the defendant, for her dower. One of these eight parts was allotted to Sarah Ellen Childs, sole representative of Sarah A. Smith, daughter of the deceased by his first marriage; said Sarah Ellen, together with her husband, J. D. Childs, being the present complainants. The widow possessed herself of the several parcels so assigned to her, and commenced cutting from that assigned her out of the land of the complainants, nearly all her fire-wood, and fencing for other portions of her land ; removing a large portion of fencing from the land on which she resided, and replacing it with new rails cut from her dower on the complainants' land. The complainants filed their bill for an injunction to restrain her from the commission of further waste on said land, charging her with the intention to benefit her own children, to the injury of the reversionary interests of her step-children ; insisting that she must use each parcel of land assigned her, separately, and denying her right to cut more wood from each than was required for the use of the same. The defendant, by her answer, denied the intention charged, and asserted her right to use all the portions assigned her as one entire dower. She averred, that the part assigned to her out of the share of the complainants, consisted almost entirely of wood, and was assigned to her to use in the manner charged, and was only useful to her for that purpose. She also objected to the jurisdiction of the court, first, because the complainants had an adequate remedy at law, in an action on the case ; and, secondly, because their remedy, if they had any in equity, should have been sought on

the equity side of Calvert County Court, where the proceedings for the partition were conducted; and moved for a dissolution of the injunction.

This motion was argued before the Chancellor, who, in his opinion, proceeded first to dispose of the objections above mentioned.]

THE CHANCELLOR :

This objection, [the first,] did not appear to me to be tenable, and therefore I consider it proper to relieve the counsel for the complainants from the necessity of replying to the argument in support of it.

The bill alleges, not only the commission of waste by the defendant, the dowress, but an intention to do so in future, and it seems to me to be conclusively established, that a court of equity in such circumstances, may interfere by injunction. 1 *Roper on Husband and Wife*, 419, 420, 421 ; *Whitfield* vs. *Bewit*, 2 *P. Wm.*, 240. Chancellor Kent says, that the ancient remedies for waste by writ of estrepement, and writ of waste at common law, are essentially obsolete, and the modern practice in this country, as well as in England, is ready to resort to the prompt and efficacious remedy by an injunction bill, to stop the commission of waste, when the injury would be irreparable, or by a special action on the case, in the nature of waste, to recover damages. 4 *Kent's Com.*, 77.

[As to the other objections, the Chancellor said :]

The reasoning in support of the objection, would seem to extend to every case in which our equity tribunals are called upon to interfere with the progress of suits, or to stay the execution of judgments at law. The partition was made under the act to direct descents, and the proceedings was on the common law side of the County Court; and no reason suggests itself, why this court should, upon a proper case, abstain from granting relief to the complainants, which would not apply with equal force to every application to it, to enjoin proceedings upon judgments, and suits at law in the county courts.

41*

The argument resulting from the convenience of the thing, and the more perfect familiarity which the county courts, in the exercise of their equity jurisdiction, would have of proceedings had in the same courts, as courts of common law, would apply as well in the one case, as the other; and the effect would be, that this court would be stripped of its power, in every case, of arresting, upon equitable grounds, the proceedings of the courts of law. This view of the subject would seem to render the objection untenable; and I therefore dismiss it, and proceed very briefly to examine the case upon its merits, as disclosed by the bill and answer.

[After reviewing the facts of the case, the Chancellor proceeded.]

An injunction was ordered upon this bill, not because I adopted, or in any way assented to this view of the relative rights of these parties, [that the widow could only use each parcel by itself,] but upon the allegation, that the widow, abusing her right to take from her dower land, wood for fuel, fences, and other necessary purposes, was acting with a view to benefit her own children, at the expense of her step-children.

If, according to the allegation of the bill, there was upon each parcel of the dower land, a sufficient supply of wood and timber for its support; and the dowress, for the purpose of sparing that which stood upon the land in which her own children held the fee, was unnecessarily cutting down and using the wood and timber which stood upon the land, the inheritance of which was in her step-children, I thought, and still think, it was the duty of this court, to interpose by way of injunction. Though a dowress, like all other tenants for life, has a right to take, what is called reasonable *estovers*; that is, wood from off the land for fuel, fences, &c., she cannot be permitted to abuse this right, and especially, the court would not stand by and see her abuse it, upon such motives as are imputed to her by this bill.

Upon examining the return of the commissioners, it is by no means apparent, that the partition among the heirs, preceded the assignment of dower to the widow; and seeing that by the 27th section of the act of 1820, ch. 191, the dower is to be ascertained and laid off, before the division among the heirs is made, it may be very fairly inferred, that though the lines of the several lots may have been previously run out and laid down ; yet still the dower was ascertained, and laid off, before an actual allotment and partition among the heirs. But at all events, be this as it may, the act of the commissioners, in laying down and assigning the dower, and making partition among the heirs, was not consummated and binding, until their return was ratified by the court, and, therefore, their whole proceedings in assigning dower, and making partition, may be regarded as taking effect at the same time.

I do not, however, regard this question, as at all material to the rights of the widow in her dower lands. Whether the assignment of her dower proceeded, or followed the partition among the heirs, in the order of time, can, in my judgment, have no influence in determining the extent to which she may use her lands. Her interest is a continuation of the seizin of her husband ; the seizin of the heir being defeated, *ab initio*, the moment the certainty of the estate to be held by the widow is ascertained by the assignment. 1 *Roper on Husband and Wife*, 427 ; 4 *Kent's Com.*, 69.

So soon, then, in this case, as the particular lands which the widow was to hold for her dower, were ascertained by the assignment of the commissioners, the right of the heirs was defeated, whether the partition among them had been made, or not, and the dowress was in, in legal intendment, of the seizin of her husband.

The Chancellor cannot subscribe to the doctrine, that the widow was bound to use each parcel of her dower land, as if her husband had died seized only of the one lot, to which such parcel belonged. The inconvenience of such a rule would be so severely felt, that nothing but the most controlling authority would induce me to follow it.

In our state, where the arable and wooded lands of our land-holders are so frequently separated by intervening tracts, and in which for the advantage and convenience of all the heirs it is necessary that the dower of the widow should be divided into several parcels, the adoption of such a rule would work much practical mischief. Indeed, I am strongly inclined to think the practicability of making equal partition of many estates would be frustrated, if the widow must either have her entire dower laid off in one unbroken parcel, or be subject to the rule contended for, if divided into separate parcels.

No authority has been referred to in support of the position, and I am persuaded none can be found. The cases of *White* vs. *Willis*, 7 *Pick.*, 143, and *White* vs. *Cutler*, 17 *Pick.*, 248, prove, that a lot of wood land, separated from the cultivated lands, may be included in the assignment of dower, and when so included, the widow may take from it fuel and timber for the use of the cultivated lands.

The equity of this bill, as already observed, consists in the allegation, that the dowress, having upon each part of her dower, wood and timber, sufficient for its support, was without necessity, and for the benefit of her own children, and at the expense of the complainants, cutting down, and using the wood upon their land, for the use and improvement of the lands, in which the fee was in her children. This allegation is, however, expressly denied by the answer, and as upon its truth, in my opinion, depends the propriety of the injunction ; and as the denial of the answer, upon this motion, and in the present state of the case (there being no evidence) is conclusive, it follows, the injunction must be dissolved.

[No appeal was taken from this order.]