Mr. Justice Hagneb
delivered the opinion of the Court:
This bill was filed in August, 1885, by all the surviving children of George W. Talburtt, except the defendant, Mrs. Shannon, against Mr. and Mrs. Shannon and the widow of Talburtt, to procure the partition of six lots of ground in Washington County, to be effected by a sale. The application is resisted by Shannon and wife, but. Mrs. Talburtt, the widow, agrees to accept an allowance from the proceeds in lieu of her dower right in the said lots.
This property has been the subject of varied and prolonged litigation in this Court. George W. Talburtt died in 1865, intestate, seised of a tract called “Chichester” and of other lands within the District of Columbia.
In May, 1869, Shannon and wife filed a bill, numbered 1638, for a partition or sale of all of this real estate.
In December, 1870, the Court appointed commissioners to make partition of all the land; but on the application of the parties this decree was revoked, in January, 1871, and the cause referred to the auditor to examine as to the practicability of a partition.
The auditor’s report having declared the property incapable of advantageous partition, the Court passed a decree for a sale, under which the greater part of the property was sold; and the widow, Catharine A. Talburtt, was allowed and paid her commutation of dower, in the part thus sold.
In January, 1872, at'the instance of the present complainants and of the widow, this decree of sale was in turn revoked; and a decree for partition was, for the second time, passed, *163 as to the property remaining unsold. Under this decree separate parcels of the unsold lands were assigned to the respective heirs, free from all claim of the widow for dower; and the six parcels referred to in the present proceedings were assigned to the widow, “to hold as and for her dower during her natural life'; ” but no disposition was made of the reversion in the said six lots after the death of the widow.
By consent of parties, in January, 1873, the report of the commissioners was finally ratified, and a decree of that date directed the payment of different sums of money by several of the heirs and by the widow, to others of the parties, for owelty of partition. These payments were made; and since that date the children of George W. Talburtt have held undisputed possession of the parcels so allotted to them in severalty by the last decree; and the widow has held and now holds undisputed possession and ownership for life of the six parcels so assigned to her as dower; and it was under these circumstances that the present bill was filed, in the new cause, in August, 1885, which, upon the hearing by the Equity Court was dismissed; and the present appeal is from that decree.
The complainants insist that their right to have a partition of the reversions in the six parcels of land, during the life tenancy of the widow, is secured to them by the Act of Congress of August 15, 1876 (19 Stat. L., 202), which declares that all tenants in common and coparceners of any estate in 'lands, tenements or hereditaments, equitable as well as legal, within the District, may, in the discretion of the Court, be compelled to make or suffer partition of such estate, and that the courts, in decreeing partition, may award a sale if it satisfactorily appears that the estate or any interest therein cannot be divided without loss or injury to the parties interested.
The respondents contend that the act of 1879 does not change the general principles respecting partition among coparceners, which, as they claim, denies the right of par *164 ties out of possession to have partition (except upon consent of all parties interested) during the continuance of the estate in possession of the life tenant. We are to inquire whether such was the established law at the- date of the statute; and if this be so, whether its language, plainly, or by necessary implication, is to be construed as having effected a change in this respect.
The defendants have also interposed other objections to the relief sought, which may be briefly noticed, in advance of the main inquiry.
First. They insist that the relief prayed cannot be granted, because the second decree of partition of January, 1873, exhausted the Court of its jurisdiction over the subject, so that the status established by that decree must remain unaltered during the life of the widow. But the two prior decrees containing similar features of a permanent settlement were revoked upon application of all parties, and we cannot agree that this Court, upon similar request and assent, would be powerless to assist the parties in varying again the state of affairs surrounding the property at this time.
Second. It is urged that as one of the original coparceners devised her undivided sixth interest in the lots to one of her surviving brothers, he stands, as to that sixth, as a tenant in common with the other parceners; while he retains, as to them, his position as coparcener with respect to his original share, and that the statute should be construed as allowing partition only where the parties are all tenants in common, or all coparceners; and hence, no partition could be had, under the statute, between persons holding by mixed tenures, as in this case.
But partition under such circumstances could have been had before the statute, as appears from Coke’s statement of the law: 1 Thomas’ Co. Litt. (697): “If two coparceners be, and one doth alien in fee, they are tenants in common, and several writs of prsecipe must be brought against them; and yet the parcener shall have the writ of partition against the *165 alienee at the common law.” “If three coparceners bé, and the eldest doth purchase the part of the youngest, the eldest having one part by descent and the other by purchase, shall have a writ of partition at the common law against the middle sister, et sic de similibus. And so it is in a far stronger case if there be three coparceners, and the eldest talceth husband, and the husband purchase the part of the youngest, the husband for his part is a stranger and no parcener ; and yet he and his wife shall have a writ of partition against the middle sister at the common law, because he is seised of the one part in the right of his wife, who is a parcener.”
Coke declares that “This inheritance of coparceners is the rarest kind of inheritance'that is in the law; and pronounces the common law rules respecting it, to be a “cunning learning.” There would certainly be no justification for limiting the operation of the statute, in this particular by a more technical rule than obtained at the common law under its astute discriminations.
Third. But we are of the opinion that no partition, in kind or by sale, can be had under the Statute of 1876, ■against the consent of any heir, during the life estate of the dowress, while she is entitled to and actually enjoys the possession of the six lots.
The general rule, at the passage of that statute, unquestionably was, that one in remainder or reversion could not have partition during the possession of the life tenant.
Mr. Freeman, in his work on Co-tenancy and Partition, states the law thus, in section 446:
“ It is a general rule prevailing in England, without exception, and also throughout the majority of the United States, that no person has the right to demand any court to enforce a compulsory partition unless he has an estate in possession — one by virtue of which he is entitled to.enjoy the present rents or the possession of the property as one of the co-tenants thereof.” And so are all the authorities.
In Maryland, Warfield vs. Gambrill, 1 Gill & J., 503, the *166 rule is stated that to obtain a partition of land in equity, the complainant must allege and establish a seisin in himself. Indeed, there can be no serious contention as to such being the common law of the matter, and it was justified by the consideration, among others, that serious inconvenience and injustice might result to the life tenant, if the reversion were divided among several different proprietors.
The possession of the dowress during her life is certainly such a life estate as is contemplated by the rule; for by the allotment she alone stands seised during the continuance of her life estate, to the total exclusion of the heirs.
In Childs vs. Smith, 1 Md. Ch., 483, where all the parcels of the estate were assigned by the decree to the children, and the widow’s dower was alloted by the same decree in a distinct portion of each parcel, the chancellor says:
“Whether the assignment of her dower preceded or followed the partition among the heirs in the orqler of time, can, in my judgment, have no influence in determining the extent to which she may use her lands. Her interest is a continuation of the seisin of her husband; the seisin of the heir being defeated ab initio, the moment the certainty of the estate to be held by the wddow is ascertained by the assignment. So soon, then, in this case, as the particular lands which the widow was to hold for her dower were ascertained by the assignment of the commissioners, the right of the heirs was defeated, -whether the partition among them had been made or not, and the dowress was in, in legal intendment, of the seisin of her husband.”
The chancellor refers, in support of his remarks, to 1 Koper on Husband and Wife, 427, and to 4 Kent’s Commentaries, 69, where the same language is used, with the statement that the fact that the widow’s seisin is to be held as of {he husband’s, is the reason why neither livery nor writing was essential to an assignment of dower in pais.
The primary purpose of the present application is a partition in kind, and a sale is only claimed because an actual partition was alleged to be impracticable. A sale can only *167 be decreed in a case where division in specie would be decreed if the lands admitted of actual partition. But if it were proved in such a case that actual partition was practicable, and the Court should, therefore, decree partition, it is obvious the heirs could not take any possession of the parts of the land assigned to them, until the death of the widow; by which time the condition of the members of the family might be greatly changed. Besides, the decree in partition in case No. 1,638, which was assented to by the parties to the original cause, partook of the character of a family settlement as to the lands then involved, by which each agreed to the relinquishment of something in exchange for something yielded by the others; and it might be a-hardship now to compel a- serious modification of that arrangement against the consent of any of the parties.
As this rule of the law, as it existed at the date of the act of 1876, would have applied to a case like the present, the inquiry remaining for consideration, is whether that statute changed the rule. If the complainants’ contention is to prevail, it must appear that the intention to effect the change was declared in express words, or is evidenced by necessary implication. It is plain the statute does not express that purpose in such direct terms, as we would expect to find if Congress intended' to change the existing law, and as has been enacted in the statutes of one or more of States. And a careful examination of the language has satisfied ús that it contains nothing which necessarily implies such a purpose. Construing the statute according to the obligatory rules of construction we have arrived at the opinion that although a tenant in common or coparcener within this District may compel partition, whether his title be legal or equitable, it is still, notwithstanding the act of 1876, indispensable to his right to institute such proceedings that he shall be actually seised or in possession of whatever estate he may claim to be entitled to.

The decree below is, therefore, affirmed.